**SWIFT INDUSTRIES, INC., Petitioner,**

v.

**BOTANY INDUSTRIES, INC.,
Respondent.**

**Civ. A. No. 70–790.**

United States District Court,
W. D. Pennsylvania.

Jan. 21, 1971.

On Motion to Amend and Supplement

Opinion March 24, 1971.

Ernest R. Dell and William S. Lerach, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for petitioner.

J. M. Poffinberger, Kirkpatrick, Lockhart, Johnson & Hutchinson, Pittsburgh, Pa., for respondent.

## OPINION

WEBER, District Judge.

In this case which was referred to binding arbitration by prior Order of this Court, the Arbitrator has made his award, and we face cross-motions to confirm the award and to vacate or modify the award.

The plaintiff argues that the award must be confirmed because it is the only award that will afford complete relief between the parties, that the scope of review of this Court is limited.

The defendant argues that the Arbitrator exceeded his authority under the Submission and under the Contract in question, and thus the award must be entirely vacated; or, in the alternative, it must be modified to vacate the separate and unauthorized provisions thereof.

Our review of the entire matter, the briefs and evidentiary materials filed, and the arguments of counsel lead us to the conclusion that what was submitted to the Arbitrator was essentially a request for a finding of declaratory relief on the question of liability between the two parties for payment of a disputed tax liability when and if that liability would be finally determined in a tax proceeding which is still pending.

The Court finds that the Arbitrator exceeded the authority granted him in the submission in respect to all provisions of Par. B of the award.

Par. B(1) would require Botany to make an immediate cash payment to Swift of $6,000,000 which the Arbitrator found to be the total maximum amount which might ultimately be assessed in the tax controversy in question. This is beyond the Arbitrator's powers. No provision in the Reorganization Agreement or the Submission authorized the Arbitrator to determine the amount of the losses or liabilities incurred or suffered.

The amount of such liability is still an open question to be determined by pending proceedings before the United States

Tax Court and any appeal therefrom. No loss would be suffered until Plaintiff were required to pay such liability.

The Arbitrator apparently drew the conclusion that the amount of liability was determined from the Statutory Notice of Deficiency (commonly called a "90 day letter"). Such notice is not a deficiency, it is the government's claim. It is not an assessment of liability; in fact no assessment of such liability can be made during the pendency of the 90 day period, and none can be made thereafter if an appeal is taken to the appropriate court until that appeal is finally determined. The 90 day letter is not a deficiency, it is the proposed deficiency which the government intends to assess after 90 days if no objection is taken.

In this case the appeal has been taken and no amount of deficiency has been finally determined. Nowhere in the Reorganization Agreement or the Submission is the Arbitrator authorized to determine the amount of Botany's liability.

Par. B(2) of the Arbitrator's Award appears to recognize this absence of a final determination of the amount of liability by a competent authority. The Arbitrator provided in the alternative that Botany deliver a surety bond guaranteeing the payment to Swift of "all liability as finally determined", and all counsel fees and expenses incurred. Not only is this a recognition that the provisions of Par. B(1) of the Award rest upon no final determination, but furthermore it imposes a condition of security for such liability upon Botany that was not contained in the Reorganization Agreement which the Arbitrator was construing. The Reorganization Agreement called for payment by Botany to Swift in cash of the liability as determined.

■ It appears that in making an award in a definite sum and then alternatively allowing Botany to guarantee payment of any sum which might ultimately be determined to be due by a surety bond, the Arbitrator was attempting to fashion some form of equi-

table relief to fit the factual situation. The Arbitrator in Par. B(1) imposed an award calling for an immediate cash payment to Swift for the total maximum amount of all possible liability, which we have determined that he was without authority to do, and then apparently recognizing his lack of authority to frame an award in this fashion attempted to modify this requirement of immediate cash payment by permitting the substitution of an open-end surety bond for all liability which might eventually be determined. An Arbitrator has no authority to substitute his own brand of justice. United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 597, 80 S.Ct. 1358, 4 L.Ed.2d 1424 [1960].

Finally, we find nothing in the Reorganization Agreement or the Submission authorizing the Arbitrator to substitute a secured liability for an ultimate liability to pay cash when the amount of that liability is determined.

We, therefore, conclude that the provisions of Par. B of the Arbitrator's award are invalid.

■ We find that the determinations of Par. B of the award are separate from the provisions of Paragraphs A and C and do not affect their validity. Therefore, we may reject the invalid part and sustain the valid part. Moyer v. Van-Dye-Way Corp., 126 F.2d 339 [3rd Cir., 1942].

We determine that the finding of Par. A of the Arbitrator's Award was within the scope of the Reorganization Agreement and the Submission and that the Arbitrator's determination of the question of liability is final and binding.

■ With respect to Par. C of the award we are of the opinion that it was within the scope of the Submission. The claim for relief sought was that Botany undertake the defense of the proceedings in connection with the asserted tax deficiency and pay all costs and expenses of doing so. The Arbitrator included in his award not only the direct legal expenses of defense of the tax

claim but the legal expense of the proceeding to enforce this obligation. We believe that it was within the Arbitrator's authority to determine what were properly expenses attributable to the tax litigation, and including the secondary expenses of the court and arbitration proceedings was a matter properly within the scope of the submission.

## ON MOTION TO AMEND AND SUPPLEMENT OPINION

Swift Industries, Inc., the petitioner here, moves the Court under Fed.R. of Civ.P. 52(b) and 59(e) to Amend and Supplement the Opinion Order and Judgment entered in this case on January 21, 1971.

Fed.R. of Civ.P. 52(b) provides that a Court, upon motion of a party made within ten days after entry of judgment, may amend its judgment or make additional findings.

Fed.R. of Civ.P. 59(e) provides that a motion to alter or amend judgment be made within ten days.

Petitioner seeks to have the Court amend findings or make additional findings and in consequence thereof, amend the judgment.

■ Paragraph 1 of the present motion seeks to have the Court amend its Findings of Fact relative to a "Submission". We find that there is no substantial disagreement between the parties as to the manner in which the within dispute was submitted to arbitration and that the Court, in its Opinion of January 21, 1971, used the word "submission" loosely and without regard to the distinction drawn between the provisions of Sec. 7 and Sec. 9 of the Commercial Arbitration Rules of the American Arbitration Association.

Sec. 9 of said Rules is entitled "Initiation Under a Submission". A "Submission" under said Rule occurs when parties do not have a prior agreement to arbitrate disputes but enter into a present agreement with reference to an existing dispute. In such a case both parties execute Form AAA C–1, entitled American Arbitration Association "Submission to Arbitration" in which the parties set forth the dispute to be arbitrated.

It is not disputed that this procedure was not employed in this case.

It is agreed by both parties that the matter submitted to arbitration here was initiated under Sec. 7 of the Rules entitled "Initiation Under an Arbitration Provision in a Contract." Under this Section one party to a dispute files Form AAA C–2 entitled "Demand for Arbitration" which recites that said claimant, a Party to an Arbitration Agreement contained in a written contract, demands arbitration thereunder. Thereafter, the claiming party sets forth the "Nature of Dispute" and the "Claim or Relief Sought". This was done by Petitioner Swift Industries, Inc. here unilaterally. At no time subsequently did Swift change or amend its claim set forth in the original Demand for Arbitration. It was this statement of "Claim or Relief Sought" that the court designated as the "Submission" in its prior Opinion.

To the extent that the Court's Opinion of January 21, 1971, finds that the Arbitrator proceeded under a "Submission" said Finding is amended to a Finding that the dispute was placed before the Arbitrator under a "Demand for Arbitration" filed by Petitioner Swift and containing a statement prepared by Swift as to the nature of the dispute and the claim or relief sought.

Thereafter the arbitration procedure under Sec. 7 proceeds in the same manner as a "Submission" under Sec. 9.

We now must determine whether this Amendment to our findings compels any change in our Conclusions of Law or Order of January 21, 1971. That Opinion and Order found that the Arbitrator exceeded the authority granted him in the submission in respect to all provisions of Par. B of the award. We now inquire if the same conclusion is valid under the Demand for Arbitration under Sec. 7 of the AAA Rules.

We found that what was submitted to the Arbitrator was essentially a request for a finding of declaratory relief on the question of liability between the two parties for payment of a disputed tax liability when and if that liability would be finally determined in a tax proceeding still pending.

We did not, in our Opinion of January 21, 1971, set forth the full language of the nature of the dispute or the claim or relief demanded by Swift. A proper understanding of our Findings requires that we set forth Swift's claim for relief in full.

## "CLAIM OR RELIEF SOUGHT

Swift requests the Arbitrator to make an award that Botany promptly undertake the defense of any and all proceedings which have been or may be brought in connection with the proposed tax deficiencies asserted against Allegheny and Lincoln; that it pay the costs and expenses of doing so; that it promptly pay any taxes, penalties and interest that may result therefrom, without the necessity of Allegheny, Lincoln or Swift first paying and without subjecting the property of Allegheny or Lincoln or Swift to any lien for any such taxes, penalties and interest; and that it reimburse Swift for its costs and expenses, including attorneys' fees, incurred in connection with the proposed tax deficiencies and this arbitration proceeding."

We did not find and do not now find that this claim authorized the Arbitrator to determine the amount of such tax liability, to award a fixed amount of damages to Swift for such sum so determined, or to require Botany to post a surety bond to secure the payment of any liability ultimately determined.

To break this demand for relief into its elements Swift requested that the arbitrator make an award that:

1. Botany undertake the defense of the tax proceedings and that it pay the costs and expenses of doing so.

The Arbitrator in Par. C of his award ordered Botany to pay all the legal expenses of this defense to date. In the final sentences of Par. B(2) he ordered that, upon the filing of the bond Botany shall have the right to defend and compromise said (tax) deficiencies. There is no specific order with respect to Swift's demand that Botany undertake the defense of the tax proceedings.

2. That Botany promptly pay any taxes, etc., that may result therefrom.

This appears to the Court to be a recognition that no taxes, etc., were yet due. Here is where we found the claim for relief to be a demand for a declaration of rights and duties under the Reorganization Agreement. Swift asked that Botany be ordered to promptly pay any tax that may result therefrom, that is, to promptly pay said taxes to the United States, not to Swift.

Here we feel that the Arbitrator in Par. B of the Award departed entirely from the authority granted in the claim for relief.

Finally, Swift asked

3. That Botany reimburse Swift for costs and expenses. This the Arbitrator did as set forth under (1) above.

Swift next moves to amend the findings to incorporate the entire Reorganization Agreement as part of the matter submitted to the Arbitrator. We recognize that the authority of the Arbitrator is based on the agreement to arbitrate, where the parties have not framed a specific issue under Sec. 9 of the AAA Rules. Does the Reorganization Agreement itself, or the rules of law governing the authority of an Arbitrator under a prior agreement to arbitrate give to the particular arbitrator in this case the authority to make the finding that he rendered?

The agreement to arbitrate is contained in Art. XIV, Sec. 14.08, Arbitra-

tion of the Reorganization Agreement. It says:

> "Any controversy or dispute arising under this Agreement shall be settled by arbitration in accordance with the rules of the American Arbitration Association. Any award of the arbitrator(s) shall be final and conclusive on all parties to this Agreement and judgment upon such award may be entered in any Court having jurisdiction thereof."

The Reorganization Agreement, which Swift advances as the matter submitted and which it argues gave the Arbitrator full authority to fashion the relief which he granted, has provisions containing representations, warranties, undertakings and agreements particularly as to tax liabilities of Allegheny and Lincoln, Art. VII, Sec. 7.08; Art. VIII, Sec. 8.-09; and a covenant by Botany that if there should be any tax liability of Lincoln (Art. XII, Sec. 12.02(b)), or Allegheny (Art. XII, Sec. 12.02(b)):

> "Botany will pay Swift in cash an amount equal to all losses, liabilities and expenses *incurred* or *suffered* by Lincoln, Allegheny or Swift by reason of any of the events specified. * * *" (emphasis supplied).

We cannot find in this language the broad authority asserted by Swift for the Arbitrator to determine the amount of a loss or liability incurred or suffered when that liability had not yet been determined by the taxing authorities themselves. No party (including Allegheny or Lincoln) has yet incurred or suffered any loss. Nor do we find that any party, with respect to this obligation, relied on anything more than the general credit of the other parties to secure these obligations. It is somewhat anomalous that Swift should demand payment in cash at once under Par. B(1) of the Arbitrator's award on the ground that Botany might be financially unable to pay the obligation when it was finally determined. When Botany, in such case, would have no assurance that Swift would be financially able to pay when the deficiency was finally determined.

We find no further authority for Par. B of the Arbitrator's Award under the Reorganization Agreement than we found in the Demand and Claim for Relief which we had previously denominated the "submission" in this case.

Finally, we find no enlargement of the Arbitrator's authority from the fact that in the course of the arbitration Swift strongly contended for an immediate monetary award and a surety bond, while Botany strongly opposed such relief. The issue was still framed by the Demand and its Claim for Relief, which never asserted the contention. Even if the scope of the issue is deemed to be enlarged by the Reorganization Agreement, nothing in that Agreement can be read so broadly as to confer upon the Arbitrator the authority to fashion a remedy in no way contemplated by the language of the Agreement. While the subject matter of the Reorganization Agreement pertains to liability for tax deficiencies it confers no power on any party to determine the existence of tax liability or the amount thereof. This is a function which the tax authorities and the courts jealously retain for themselves.

We find extensive reference to the case law of little help here. Each case is distinguished by its facts. But the guiding principle has been fully stated in that fountainhead of arbitration cases:

United Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S. Ct. 1358, 4 L.Ed.2d 1424 [1960].

> " * * * Nevertheless, an arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award." (p. 597, 80 S.Ct. at p. 1361).