Douglas AUSTIN, Nada Austin, Nicholas Bate, and Ange Bate, Plaintiffs–Appellees,

v.

U S WEST, INC.; U S West Overseas Operations, Inc.; and U S West International, Inc., Defendants–Appellants.

No. 96CA0066.

Colorado Court of Appeals, Div. IV.

Sept. 5, 1996.

Clanahan, Tanner, Downing and Knowlton, P.C., Richard L. Shearer, Lisa M. Williams, Denver, for Plaintiffs–Appellees.

Sherman & Howard L.L.C., Cynthia P. Delaney, Walter V. Siebert, Denver, for Defendants–Appellants.

Opinion by Judge BRIGGS.

Defendants, U S West, Inc., U S West Overseas Operations, Inc., and U S West International, Inc., appeal the order of the trial court finding that the claims of plaintiffs, Douglas Austin and Nicholas Bate (employees) and Nada Austin and Ange Bate (wives), were not subject to the arbitration clause in the employees' employment agreements. We affirm in part, reverse in part, and remand with directions.

The employees each responded to advertisements concerning employment with defendants in Russia to operate a cellular phone joint venture. After negotiations with defendants and visits to Russia with their wives, which included drives to view housing, the employees each signed an employment agreement. The employees and their wives gave up their jobs, leased their homes, sold many of their possessions, and moved to Russia. The Austins brought their two infant children.

According to the complaint, the employees had been promised they would be "handed the keys" to the business and would be provided housing of the quality they had been shown. However, they discovered upon arriving in Russia that the venture was essentially unfunded and that development efforts were deadlocked by a dispute with the Russian joint venturers. Further, their housing and other living arrangements had not been made.

After living for many weeks in hotels, the wives and children returned home. When the problems with the joint venture and housing continued, the employees resigned.

Plaintiffs filed this action, claiming fraudulent inducement and outrageous conduct. Defendants responded to the complaint with a motion to compel arbitration based on an arbitration clause in the employment agreements.

The trial court denied the motion, concluding that the employees were not required to arbitrate because their claims were not within the scope of the arbitration clause and that the wives were not bound by the employment agreements. Defendants appeal that ruling pursuant to § 13–22–221, C.R.S. (1987 Repl. Vol. 6A).

I.

Defendants contend that the trial court erred in denying their motion to compel arbitration of the employees' claims because the allegations of those claims fall within the scope of the arbitration clause in the employment agreements. In the circumstances presented here, we agree.

A.

At the outset, we note that the trial court first determined that the parties intended for the court and not an arbitrator to decide the scope of the arbitration clause. Defendants do not appeal that ruling. Hence, the issue is properly presented for review. *See gener-*

*ally Eychner v. Van Vleet,* 870 P.2d 486 (Colo.App.1993); *South Conejos School District RE–10 v. Martinez,* 709 P.2d 594 (Colo. App.1985).

We also note that the parties do not dispute, and we agree, that claims for fraud in the inducement and outrageous conduct may be subject to arbitration. *See generally Prima Paint Corp. v. Flood & Conklin Manufacturing Co.,* 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967). Thus, the question presented is whether the employees' claims fall within the scope of the specific arbitration clause in the employment agreements.

 Arbitration is a matter of contract, and the ordinary principles of contract interpretation apply. *See Eychner v. Van Vleet, supra.* The primary goal of interpretation is to give effect to the expressed intention of the parties. In determining that intent, the court must examine the wording of the arbitration clause and accord the terms of the clause their plain and ordinary meanings. *See Cache National Bank v. Lusher,* 882 P.2d 952 (Colo.1994); *Eychner v. Van Vleet, supra.*

 The issue sought to be arbitrated must be within the scope of the language of the arbitration clause for a court to have authority to order arbitration. *See Cabs, Inc. v. Delivery Drivers Local No. 435,* 39 Colo.App. 241, 566 P.2d 1078 (1977). However, arbitration is a favored means of dispute resolution in Colorado courts. *See National Camera, Inc. v. Love,* 644 P.2d 94 (Colo.App. 1982); *Lee v. Grandcor Medical Systems, Inc.,* 702 F.Supp. 252 (D.Colo.1988). Hence, even though defendants seek to enforce the arbitration clause under the Uniform Arbitration Act as adopted in Colorado, § 13–22–201, et seq., C.R.S. (1987 Repl.Vol. 6A) and not the Federal Arbitration Act, 9 U.S.C. § 1, et seq. (1994), any doubts about the scope of the clause should be resolved in favor of arbitration, as in the federal courts. *See Cabs, Inc. v. Delivery Drivers Local No. 435, supra; see also Mastrobuono v. Shearson Lehman Hutton, Inc.,* —— U.S. ——, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995); *Mar–Len of Louisiana, Inc. v. Parsons–Gilbane,* 773 F.2d 633 (5th Cir.1985).

Here, the parties' employment agreements each contained the following clause: "Any dispute arising between you and the Company with respect to the performance and interpretation of this Agreement shall be submitted to arbitration in the State of Colorado. . . ." Each also contained an integration clause stating that the agreement "encompasses all of the commitments made to you in conjunction with your temporary employment with U S WEST."

Plaintiffs urge that we not interpret the arbitration provision as broadly as more typical arbitration provisions, such as those involved in *Lee v. Grandcor Medical Systems, Inc., supra.* The first of the two provisions involved there provided for arbitration of any claim "arising out of or relating to" a management agreement or "the making, performance or interpretation thereof." The second required arbitration of any disputes "arising under" a transfer agreement. The court found both to be sufficiently broad to include claims for fraud in the inducement. Other courts have construed similar clauses equally as broadly. *See generally Prima Paint Corp. v. Flood & Conklin Manufacturing Co., supra; Zdeb v. Shearson Lehman Brothers,* 674 F.Supp. 812 (D.Colo.1987); *cf. Ayers v. Prudential–Bache Securities, Inc.,* 762 P.2d 743 (Colo.App.1988); *but see Mediterranean Enterprises, Inc. v. Ssangyong Corp.,* 708 F.2d 1458 (9th Cir.1983).

We agree that the arbitration clause in the employment agreements here cannot be construed as broadly as those before the court in *Lee.* To do so would require that we ignore the qualifying words, "with respect to the performance and interpretation of this Agreement." Under this narrower language, some claims of fraud in the inducement and outrageous conduct may not be subject to arbitration.

For example, the complaint in this case included an allegation that defendants misrepresented that they would have the Russian joint venturers "do what they could" to help Mrs. Bate start a retail store in Russia. Such a claim may "arise under or relate to" her husband's employment agreement, assuming she was otherwise subject to it. It may nevertheless not be a dispute "arising

... with respect to" its "performance and interpretation" because the claimed misrepresentation addresses a subject entirely separate from the subject matter of the employment agreement.

■ However, merely because a claim is stated in tort does not mean that it necessarily falls outside a clause requiring arbitration of any dispute with respect to the performance and interpretation of the agreement. Were the rule otherwise, a party could frustrate any agreement to arbitrate simply by the manner in which it framed its claims. *See In re Oil Spill by Amoco Cadiz,* 659 F.2d 789 (7th Cir.1981); *Hannah Furniture Co. v. Workbench, Inc.,* 561 F.Supp. 1243 (W.D.Pa. 1983). Therefore, to decide whether an arbitration agreement encompasses a dispute, a court must determine whether the factual allegations underlying the claim are within the scope of the arbitration clause, regardless of the legal label assigned to the claim. *See Genesco, Inc. v. T. Kakiuchi & Co.,* 815 F.2d 840 (2d Cir.1987); *Alamria v. Telcor International, Inc.,* 920 F.Supp. 658 (D.Md. 1996).

### B.

■ Focusing on the torts plaintiffs have alleged, we recognize that claims for fraudulent inducement to enter into a contract are ordinarily predicated upon misrepresentations of fact outside the scope of any contractual obligations. *See Bock v. Brody,* 870 P.2d 530 (Colo.App.1993), *aff'd in part and rev'd in part on other grounds,* 897 P.2d 769 (Colo. 1995). Claims for outrageous conduct are likewise not typically premised on contractual representations and obligations. Here, however, the employees' claims for fraud in the inducement and outrageous conduct are essentially based on the allegations that defendants misrepresented the type and quality of housing and other living conditions to be provided and misrepresented the financial and business status of the joint venture. Housing and the joint venture are both subjects addressed in the employment agreements.

For example, employee Austin's agreement provided that the venture would "provide housing for you" and would "bear the cost of

your housing including utilities" and further provided that his pay would be reduced by a fixed amount equal to the average amount which an American of his income level paid per month for housing in the United States. The claim that defendants failed to provide the agreed type and quality of housing touches on a subject directly addressed in the employment agreements—the obligation to provide employee housing. Indeed, the claim could as easily have been stated as a claim for breach of contract, requiring the court both to interpret the requirement for housing and determine whether defendants' conduct constituted a breach of that obligation.

Neither employment agreement explicitly addresses the venture's financial or business status. However, the agreements deal extensively with the subject of the venture by, for example, describing the employees' job titles, compensation, and term of employment, and addressing the confidentiality of technical and business information and ownership of data, information, and proposals. It is not a subject entirely separate from, and indeed is central to, the subject matter of the employment agreements.

Finally, the integration clauses in the employment agreements cannot be ignored. While the mere presence of an integration clause may not necessarily bar a claim for fraud in the inducement, *see Bill Dreiling Motor Co. v. Shultz,* 168 Colo. 59, 450 P.2d 70 (1969), because of the integration clause the dispute would appear to arise "with respect to the ... interpretation" of at least this aspect of the employment agreement.

Based on the factual allegations, we cannot say that the employees' claims clearly fall outside the performance and interpretation of the employment contracts. Therefore, in light of the requirement that any doubts concerning the scope of an arbitration clause be resolved in favor of arbitration, we conclude that the employees' claims must be arbitrated. *See Mar–Len of Louisiana, Inc. v. Parsons–Gilbane, supra* (given the "heavy presumption of arbitrability," clause requiring arbitration of dispute "with respect to the interpretation or performance" of the agree-

ment was sufficiently broad to include claim that contract modifications were invalid because of economic duress); *Schacht v. Beacon Insurance Co.,* 742 F.2d 386 (7th Cir. 1984)(claim of fraud in the inducement fell within clause requiring arbitration of differences "with respect to the interpretation" of the agreement or "the performance of the respective obligations of the parties"); *Hannah Furniture Co. v. Workbench, Inc., supra* (claims of breach of fiduciary duty and fraud ·in the inducement fell within requirement to arbitrate all disputes between the parties "involving questions of interpretation of any of the provisions" of the agreement); *cf. Kiewit Western Co. v. City & County of Denver,* 902 P.2d 421 (Colo.App.1994)(claims of fraud in inducement of contract and breach of the covenant of good faith and fair dealing necessarily constitute a dispute relative to the contract itself).

## II.

█ Defendants also contend the trial court erred in concluding that the wives were not required to arbitrate their claims because they asserted in the complaint that they were parties to the employment agreements. We are not persuaded.

Plaintiffs alleged that the employees' families made their decisions to relocate to Russia in part because of misrepresentations made when the wives were present. In the trial court, defendants argued, among other things, that the wives were required to arbitrate their claims because they were necessarily third-party beneficiaries of the employment agreements and thus subject to the arbitration clause. The trial court concluded the wives were neither parties to the employment agreements nor intended third-party beneficiaries.

On appeal defendants no longer contend that the wives were actually parties to the employment agreements or intended third-party beneficiaries. They nevertheless assert that, because plaintiffs "essentially" alleged that the wives, like their husbands, were fraudulently induced to accept the employment agreements, the wives may not now claim they were not parties to the agreements. Defendants further appear to argue that the wives must in any event prove the existence of a contract to support their claims and, because the only contracts in question are the employment agreements containing the arbitration clause, the wives cannot avoid arbitration of their claims.

The claims plaintiffs seek to assert on behalf of the wives, stated with less than model clarity, are included with the claims of their husbands, and the wives do allege they were fraudulently induced to move to Russia. However, we do not read the allegations pertaining to them as asserting that they were induced to become parties to the employment agreements containing the arbitration provisions. Rather, the wives appear to allege fraudulent misrepresentations were made directly to them and that they suffered damages separate from those asserted by the employees under the employment contracts. Hence, the position now being taken by plaintiffs is not inconsistent with any position taken earlier in the proceedings, and we perceive no basis for concluding that the wives' claims so rely on the employment agreements as to require that their claims must be arbitrated pursuant to the arbitration clause in those agreements.

We express no view on the viability of the wives' claims. We hold only that the trial court did not err in concluding that these claims are not subject to the arbitration clause contained in the employment agreements.

Defendants further contend the trial court erred in not staying the trial proceedings pending arbitration. However, the trial court has not yet had the opportunity to address the issue because of its conclusion that none of the claims was subject to arbitration. We therefore decline to address the issue on this appeal.

The order is affirmed as to the claims asserted by the employees' wives, reversed as to the claims asserted by the employees, and the cause is remanded for further proceedings consistent with this opinion.

DAVIDSON and TAUBMAN, JJ., concur.